FILED
JAMES BONINI
CLERK

04 NOV -2 PM 5:53

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Plaintiff Ohio Democratic Party,<br><br>v.<br><br>Presiding Judges for the election precincts in Franklin County and Knox County; the Franklin County Board of Elections; the Knox County Board of Election; and J. Kenneth Blackwell, in his capacity as Ohio Secretary of State, all in their official capacities,<br><br>      Defendants. | CASE No. C2 04 1055<br>(Judge _____)<br><br>JUDGE MARBLEY<br><br>MAGISTRATE JUDGE KEMP<br><br><br>MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM IN SUPPORT |

## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff seeks a temporary restraining order enjoining and compelling defendants to make sufficient voting machines, paper ballots, or other means of casting ballots available in Franklin County and Knox County, where even at midday the shortage of equipment has caused a backup of many hours of citizens waiting to vote.

## MEMORANDUM IN SUPPORT

Plaintiff respectfully submits this memorandum of law in support of its motion for a temporary restraining order.

## FACTS

The facts are set forth in the Complaint and accompanying affidavits.

## ARGUMENT

Defendants' refusal to supply sufficient balloting mechanisms to permit the reasonable exercise of the franchise by voters in the County violates both Ohio law and the federal constitutional right to vote. Immediate relief is required or the most precious of the rights of citizenship, the right to vote, will be irreparably lost and impaired.

### A. Plaintiff and the Voters in Franklin County Will Suffer Immediate and Irreparable Injury.

Plaintiffs have standing to assert the right of voters whose right to vote is being burdened. *See Sandusky County Democratic Party v. Blackwell*, No. 04-4265, 2004 WL 2384445 (6th Cir. Oct. 26, 2004).

### 1. By Refusing to Make Sufficient Balloting Mechanisms Available, Defendants Are Violating Numerous Provisions of Ohio Law.

Ohio law clearly requires that the board of elections supply sufficient voting materials to meet the needs of voters.[1] Each polling place must have "adequate facilities ... for conducting the election," including "a sufficient number of screened or curtained voting compartments to which electors may retire and conveniently mark their ballots." ORC Ann. 3501.29(A). The board also "shall provide for each polling place the necessary ballot boxes, official ballots, cards of instructions, registration forms, ... and all other supplies necessary for casting and counting the ballots and recording the results of the voting at the polling place." ORC Ann. 3501.30.

In the affected precincts in Franklin County, these requirements have not been met: The numbers of voting machines (and voting compartments) are not "sufficient" to meet the demands of voters, resulting in inordinate delays and deterring voters from enduring the

lengthy waits needed to cast their ballots. Similarly, the board of elections has not provided "the

necessary ... official ballots" to the extent that there are not enough electronic vote recording

devices to allow voters to cast their ballots within a reasonable time on election day. Currently,

the facts show that the voters already in line *before* the post-work voting rush cannot possibly

vote in less than multiple hours; when the additional voters who predictably show up after work

arrive, the waits will be even longer, extending hours after normal poll closing times. In no

sense of the word can polling places that require voters to choose between giving up their vote

and waiting far into the night to vote be considered "adequate."

        In addition, Ohio law provides expressly for the provision of additional ballots

when, during voting, heavy turnout results in insufficient ballots at a polling place. Specifically,

the law provides that "if during the time the polls are open additional ballots or supplies are

required, the board of elections, upon requisition by telephone or in writing and signed by a

majority of the election judges of the precinct stating why such additional supplies are needed,

shall supply them as speedily as possible." ORC Ann. 3505.17. Section 3505.17 plainly

provides the board with authority to provide additional ballots when necessary, and imposes a

mandatory duty to provide them when the election judges so request. Here, the election judges

did not request additional ballots, but nothing in the statute suggests that additional ballots may

be provided *only* when election judges request. Where the provision of additional ballots is

necessary to fulfill the board's own responsibilities under sections 3501.29(A) and 3501.30, it

must exercise its authority to supply additional ballots even if the election judges have defaulted

in their own duty to request them.

        The court's equitable powers provide it ample authority to remedy these

violations. "In equitable matters, the court has considerable discretion in attempting to fashion a

---

[1] Only the *local* officials, not Secretary of State Blackwell, are defendants for purposes of this state claim.

fair and just remedy." *Winchell v. Burch* (1996), 116 Ohio App.3d 555, 561, 688 N.E.2d 1053. The interests of fairness and justice here require that the court fashion an order that will require the board of elections to fulfill its duties to provide adequate materials at the polling places and make it possible for voters to cast their ballots without the undue hardships posed by the lack of ballots at these polling places. An injunction requiring the board of elections to make paper ballots available to these polling places will achieve those ends and carry out the policies of the Ohio statutes.

> **2.** **By Refusing to Make Sufficient Balloting Mechanisms Available, Defendants Are Unconstitutionally Burdening the Fundamental Right to Vote Guaranteed by the U.S. Constitution.**

Defendants' refusal to make sufficient balloting mechanisms available to permit voting without extreme delay also violates the fundamental right to vote guaranteed by the U.S. Constitution. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Given its fundamental nature, restrictions on the right to vote impinge on the First Amendment right of free expression and association and the Fourteenth Amendment guarantees of due process. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Williams v. Rhodes*, 393 U.S. 23 (1968). At the same time, states have a legitimate interest in regulating elections to check voter qualifications and to prevent voter fraud.

The Supreme Court has thus articulated a balancing test to determine when a state's regulatory interests justify restrictions on the right to vote:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interest put forward by the State as justifications for the burden imposed by its [conduct]. In

passing judgment, the Court must not only determine the legitimacy and strength of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged [conduct] is unconstitutional.

*Anderson*, 460 U.S. at 789.

Here, the character and magnitude of the injury to the fundamental right to vote is palpable and severe. The Ohio Legislature is mindful of how important every minute is on election day; no voter is allowed to occupy a voting compartment or use a voting machine more than five minutes when all the voting compartments or machines are in use and voters are waited to occupy them. Ohio Rev. Code § 3505.23. Two judges of the U.S. Court of Appeals for the Sixth Circuit reaffirmed on the eve of today's election that the right to vote without undue delay must be protected. "Should . . . inordinate delay and related horrors . . . become a reality tomorrow, the federal courts will be open to respond to proof supported allegations of an unconstitutional burden on Ohio citizens' right to vote." *Summit County v. Blackwell*, No. 04-4311/4312 (6th Cir. Nov. 2, 2004) (Ryan, J., concurring); *see also id.* (Cole, J., dissenting).

Here, moreover, there is simply *no* state interest to balance against this extreme burden on the fundamental right to vote. To the contrary, Ohio statutes expressly recognize that the state has a strong interest in the *ensuring* that each polling place has the "necessary ballot boxes, official ballots, cards of instructions, registration forms, pollbooks or poll lists, tally sheets, forms on which to make summary statements, writing implements, paper, and all other supplies necessary for casting and counting the ballots and recording the results of the voting at the polling place," R.C. § 3501.30; in "provid[ing] for each precinct a polling place and provide adequate facilities at each polling place for conducting the election," R.C. § 3501.29; and "if during the time the polls are open additional ballots or supplies are required," "supply[ing] them

as speedily as possible," R.C. § 3505.17. Thus, the state has no interest in denying the needed supplies for citizens to exercise their right to vote. Even if there was such an interest, not providing sufficient means to exercise the franchise is not narrowly tailored to achieve any hypothetical state interest.

**B.     Ex Parte Relief is Urgently Needed.**

Plaintiff made reasonable efforts to notify defendants and/or their attorneys of this motion. In addition, because the election and the ensuing violation of Ohio election law is ongoing, and the election is currently scheduled to end at 7:30 p. m. tonight, plaintiff and its members will be further irreparably damaged by any delay in the issuance of a temporary restraining order while waiting for defendants' attorney to appear in this Court. Finally, the Court has the discretion not to require plaintiffs to post a bond for the temporary restraining order to issue. *See Vanguard Transportation Systems, Inc. v. Edwards Transfer & Storage Co.*, 673 N.E.2d 182, 186 (Ohio App. 10th Dist. 1996) (reasoning that because the Ohio statute permitting injunctions is modeled after Fed. R. Civ. P. 65, and federal courts have determined that under that statute they have the discretion not to set bond, Ohio courts have the same discretion). *See also* 2 Baldwin's Oh. Prac. Civ. Prac. § 65:5 (2004) ("The judge may waive the requirement of a security if the applicant can demonstrate that it is not necessary"); 56 Ohio Jur. 2d Injunctions § 196 (2004) ("The discretion of the court as to the amount of the bond includes discretion to require no bond at all, since the court, in theory, may fix the bond at zero dollars, or at a nominal sum, such as one dollar."). Because defendants cannot be damaged by being required to comply with Ohio election law, this Court should order that plaintiff post no bond in support of a temporary restraining order.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests a temporary restraining order requiring defendants to provide paper ballots, or another alternative means of voting to voters in Franklin and Knox Counties.

Respectfully submitted,

Kathleen M. Trafford (0021753)
Porter Wright Morris and Arthur LLP
41 South High Street
Columbus, Ohio 43215
(614) 227-1915
(614) 227-2100
ktrafford@porterwright.com

413152
COLUMBUS/1184412 v.01